UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SCOTT DOUGLAS JONES,             )
                                 )     3: 10-cv-01474-JO
          Petitioner,            )
                                 )
     v.                          )
                                 )     OPINION AND ORDER
STEVE FRANKE,                    )
                                 )
          Respondent.            )


     Ellen C. Pitcher
     Office of the Federal Public Defender
     101 S.W. Main Street, Suite 1700
     Portland, Oregon 97204

          Attorney for Petitioner

     Ellen F. Rosenblum
     Attorney General
     Andrew Hallman
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

          Attorneys for Respondent


JONES, District Judge.


     1 - OPINION AND ORDER

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his convictions and sentence for two counts of Unlawful Sexual Penetration in the First Degree. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus [42] is granted.

## BACKGROUND

On December 5, 2002, the Lincoln County Grand Jury returned a secret indictment charging petitioner with one count of Rape in the First Degree, three counts of Unlawful Sexual Penetration in the First Degree, and one count of Sexual Abuse in the First Degree. Respondent's Exhibit 102. Following a jury trial, petitioner was acquitted on the rape charge and convicted on the remaining counts. The sentencing court imposed three concurrent 100-month sentences for the counts of unlawful sexual penetration to run consecutively with a 75-month sentence for the count of sexual abuse. Respondent's Exhibit 101. The penetration convictions pertain to petitioner's abuse of his minor sister, Stephanie Jones, and the sexual abuse conviction pertains to his abuse of another minor female.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without written opinion, and the Oregon Supreme Court denied review. *State v. Jones*, 197 Or. App. 202 (2005) *rev. denied*, 338 Or. 363 (2005); Respondent's Exhibits 103-107. Petitioner then appealed the entry of an amended

2 - OPINION AND ORDER

judgment, but the Court of Appeals again affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Jones*, 207 Or. App. 436 (2006) *rev. denied*, 341 Or. 548 (2006); Respondent's Exhibits 108-112.

Eventually, petitioner filed a Second Amended Petition for post-conviction relief ("PCR") in state court. The PCR trial court denied relief. *Jones v. Hall*, Umatilla County Circuit Court Case No. CV070482. On appeal, the Oregon Court of Appeals affirmed the PCR court without written opinion, and the Oregon Supreme Court denied review. *Jones v. Hall*, 236 Or. App. 268 (2010), *rev. denied*, 349 Or. 56 (2010); Respondent's Exhibits 136-140.

On December 2, 2010, petitioner filed this action. In his Amended Petition for Writ of Habeas Corpus, he raises the following grounds for relief:

> Ground One:  Violation of the Fourteenth Amendment to the United States Constitution - Violation of Due Process.
>
> Supporting Facts:  Mr. Jones pleads on information, belief, and/or personal knowledge that his convictions were obtained in violation of the Fourteenth Amendment to the United States Constitution because his conviction was based in part on false testimony obtained by the prosecutor. Specifically, the prosecutor had Jennifer Pond, Stephanie Jones' older sister, coach Ms. Jones, the alleged victim in Counts I through IV, on her testimony regarding the charges of Unlawful Sexual Penetration set forth in Counts II, III and IV of the Indictment. Furthermore, she told Ms. Pond not to reveal that she had done so.
>
> Ground Two:  Violation of the Fourteenth Amendment to the United States Constitution - Violation of Due Process.
>
> Supporting Facts:  Mr. Jones pleads on information, belief, and/or personal knowledge that his convictions were obtained

3 - OPINION AND ORDER

in violation of the Fourteenth Amendment to the United States Constitution when the prosecutor failed to disclose exculpatory evidence regarding the alleged victim, Stephanie Jones. Specifically, the prosecutor knew, close to trial in this case, that Ms. Jones did not understand the parts of her body and had not in fact accused Mr. Jones of sexual penetration, yet the prosecutor failed to disclose this information to the defense.

Ground Three: Violation of the Sixth and Fourteenth Amendments to the Unites States Constitution - Violation of Due Process, and the Right to Present a Defense, and the Right to a Fair Trial.

Supporting Facts: Mr. Jones pleads on information, belief, and/or personal knowledge that his convictions were obtained in violation of the Fourteenth Amendment to the United States Constitution when the prosecutor instructed witnesses not to talk to the defense attorney, thereby depriving Mr. Jones of exculpatory evidence, evidence necessary to his defense, and a fair trial.

Ground Four: Violation of the Eighth Amendment to the United States Constitution - Actual Innocence.

Supporting Facts: Mr. Jones pleads on information, belief, and/or personal knowledge that his convictions were obtained in violation of the Eighth Amendment to the United States Constitution because he is factually innocent of the crime of Unlawful Sexual Penetration in the First Degree.

Ground Five: Violation of the Sixth Amendment to the United States Constitution - Ineffective Assistance of Counsel.

Supporting Facts: Mr. Jones pleads on information, belief, and/or personal knowledge that his convictions were obtained in violation of the Sixth Amendment to the United States Constitution when his attorney failed to advise Mr. Jones that it was his decision and his alone to decide whether he should testify at trial, thereby depriving him of his Fifth Amendment right.

Respondent asks the Court to deny relief on the Amended Petition on the basis that: (1) Grounds One, Two and Three are procedurally defaulted and the default is not excused; (2) Grounds

One, Two and Three are untimely and not subject to either statutory or equitable tolling; (3) Grounds One, Two and Three are without merit; (4) Ground Four is not cognizable in this habeas proceeding and is otherwise without merit; and (5) Ground Five was denied on the merits in a state court decision entitled to deference.

### DISCUSSION

## I.   Exhaustion and Procedural Default

### A.   Standards

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

5 - OPINION AND ORDER

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

## B.  **Analysis**.

Petitioner raised one claim on direct appeal alleging that "[t]he trial court erred by denying defendant's motion for mistrial based upon violation of the clergy-penitent priv[i]lege." He also raised one claim on appeal from the PCR trial court's denial of relief alleging that "[t]he post-conviction court erred in ruling that petitioner's trial counsel was adequate and effective when he failed to call petitioner as a witness." This PCR appeal claim relates to petitioner's Ground Five claim set forth above. With regard to his Grounds One through Three prosecutorial misconduct claims, however, the record makes clear that petitioner failed to fairly present them to the Oregon courts and that they are now

6 - OPINION AND ORDER

procedurally defaulted.[1] Nevertheless, petitioner contends that he can demonstrate actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995) sufficient to excuse any procedural default of these claims.[2]

The Supreme Court in *House v. Bell* elaborated on the test for satisfying the fundamental miscarriage-of-justice exception to procedural default:

> In *Schlup* [*v. Delo*, 513 U.S. 298 (1995)], the Court adopted a specific rule to implement this general principle. It held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S. at 327, 115 S. Ct. 851. This formulation, *Schlup* explains, "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Ibid*. (quoting *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L.Ed.2d 517 (1991)).
>
> * * *
>
> [T]he *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. [Instead a] petitioner's burden at the gateway stage is to demonstrate that *more likely than not, in light of the new evidence, no*

---

[1]   Similarly, petitioner failed to fairly present his Ground Four freestanding actual innocence claim to the Oregon courts. However, any procedural default of this claim is excused on the basis that freestanding claims of actual innocence are not cognizable in Oregon courts. Accordingly, the Court will address this claim in the "Merits" section below.

[2]   Petitioner withdrew his reliance on *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) to excuse the default. Petitioner's Reply [81], pp. 12-13.

> reasonable juror would find him guilty beyond a
> reasonable doubt - or, to remove the double
> negative, that more likely than not any reasonable
> juror would have reasonable doubt.

547 U.S. 518, 536-38 (2006)(emphasis added).   "[T]he *Schlup*
standard is demanding and permits review only in the
'extraordinary' case." *Id.* at 538 (citing *Schlup*, 513 U.S. at 327)
(quotations omitted).

To be credible, an actual-innocence claim must be supported by
"new reliable evidence - whether it be exculpatory scientific
evidence, trustworthy eyewitness accounts, or critical physical
evidence - that was not presented at trial." *Schlup*, 513 U.S. at
324.

> *Schlup* makes plain that the habeas court must
> consider "'all the evidence,'" old and new,
> incriminating and exculpatory, without regard to
> whether it would necessarily be admitted under
> "rules of admissibility that would govern at
> trial." *See id.*, at 327-328, 115 S. Ct. 851
> (quoting Friendly, Is Innocence Irrelevant?
> Collateral Attack on Criminal Judgments, 38 U. Chi.
> L. Rev. 142, 160 (1970)).  Based on this total
> record, the court must make "a probabilistic
> determination about what reasonable, properly
> instructed jurors would do." 513 U.S. at 329.  The
> court's function is not to make an independent
> factual determination about what likely occurred,
> but rather to assess the likely impact of the
> evidence on reasonable jurors.  *Ibid.*

*House*, 547 U.S. at 538.

On the strength of new evidence presented in support of
petitioner's gateway actual innocence showing, including a recent
videotaped interview of the victim Stephanie Jones recanting her

8 - OPINION AND ORDER

trial testimony on the key issue of whether petitioner digitally penetrated her vagina, the Court held a full evidentiary hearing in this matter.  Over the course of three days of hearing, the Court heard extensively from petitioner, Stephanie Jones, Kenneth Jones (petitioner's father), Jennifer Pond (petitioner's older sister), Sally Bovett (the victim's advocate involved in the case), Detective Ron Benson, and Circuit Court Judge Sheryl Bachart (the former Deputy District Attorney who prosecuted petitioner's case). Ultimately, however, upon careful consideration of all the testimony and the record presented in this case, the Court determined that petitioner's underlying prosecutorial misconduct claims set out in Grounds One through Three are without merit. Excerpt of Proceedings (Evidentiary Hearing of October 24, 2013).

Given the fact that the Court has already denied petitioner's Grounds One through Three claims on their merits, it need not reach the question of whether he can satisfy the so-called fundamental miscarriage-of-justice (gateway actual innocence) exception to excuse the procedural default of these claims.  *See Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997)(federal habeas court may bypass question of procedural default to deny claim on merits); 28 U.S.C. § 2254(b)(2)("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

9 - OPINION AND ORDER

Nevertheless, for the reasons set out below in the Court's examination of petitioner's freestanding actual innocence claim, the Court would have concluded that no reasonable juror would find petitioner guilty of unlawful penetration when armed with new evidence of total recantation by the father of petitioner's alleged confession to him, coupled with the victim's unequivocal recantation that the petitioner did not penetrate her vagina.

## II.   **Merits**

### A.   **Standards**.

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

10 - OPINION AND ORDER

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.    The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410.    The state court's application of clearly established law must be objectively unreasonable.    *Id.* at 409.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel.    First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984).    Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance."    *Id.* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense.    The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Id.* at 694.

11 - OPINION AND ORDER

A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id.* at 696.

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)(per curium). Moreover, where a state court has adjudicated an ineffective assistance of counsel claim on the merits, a habeas court's review of a claim under the *Strickland* standard is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

B. **Analysis**.

    1. **Ground Five: Ineffective Assistance of Trial Counsel for Failing to Advise Petitioner of his Constitutional Right to Testify at Trial**

With respect to this ineffective assistance of trial counsel claim, petitioner's trial counsel appeared at the PCR hearing via phone and testified at length on the issue of whether he advised petitioner of his right to testify at trial. In summary, he testified that: (1) he had practiced criminal law for nearly 32 years; (2) it is his practice to advise his criminal clients of their right to testify at trial—though he had no independent recollection of having advised petitioner of this right; (3) he recalled that at some point petitioner may have wanted to testify

12 - OPINION AND ORDER

and that they discussed it; (4) while he recalls discouraging petitioner from testifying, at no time did he tell petitioner he could not testify; (5) he recalls being concerned with admissions petitioner made; (6) "there wasn't any question in [counsel's] mind that [petitioner] knew he had a right [to testify]; and (7) he recalled that at the time of trial, petitioner was "a very high-strung young man" and counsel was concerned he would make statements that would be harmful to his case. Respondent's Exhibit 134, pp. 33-45.

For his part, petitioner testified at his PCR deposition that although he felt very strongly that he should testify at his trial, his attorney advised him against it. Specifically he averred that his attorney told him "[d]on't testify, it's not going to be good" and petitioner responded "I really want to, but I'll do what you want me to do." Respondent's Exhibit 133 at 90. Petitioner testified that had he been allowed, he would have testified: (1) about his father's motive, i.e., "extreme ambition" to hurt him and the escalating nature of the conflict between them; and (2) that while he did sexually abuse Stephanie Jones, he never penetrated her with his finger. Specifically, he stated:

Q.   Uh-huh.  What did you do with your finger?

A.   Uhm, I touched her.  But I don't -- but it wasn't my
     finger.  I -- it was more like looking, a lot less like
     touching.  It was me -- understand, me in my naivete
     looking at her body.  It wasn't even attempting to
     penetrate her, it was me looking, but looking sometimes
     requires, you know, your hand so that you can see what

13 - OPINION AND ORDER

you're looking at. And that's what this was. There was never any -- any time that I attempted to penetrate her, not in any way, shape or form.

And the reality was that I didn't even know -- and as an embarrassment to myself I didn't even know what part was her clitoris, what part was her vulva, what part was her vagina, and I didn't know that at the time. But the thing was she didn't know either, and so what I thought was her vagina was actually her clitoris and I didn't know better. And so while I was trying to see this for the first time and understand what I was looking at I understand how she could misunderstand that and think I was trying to penetrate her, but I wasn't.

And it was clear even in the testimony of -- of Ms. Pond and in my father's testimony that when they stated the first time what they thought I had said they said that I admitted that I -- that I said something to the extent if I was too small to -- that she was too small to be penetrated, and that -- that wasn't what I had said.

What I had said was that I couldn't find a hole, there wasn't one. That's because I was looking at her clitoris, I wasn't looking at her vagina. And I totally misunderstood what I was looking at there.

Respondent's Exhibit 133, pp. 93-95.

During his PCR hearing, petitioner expanded on his deposition testimony. In that proceeding, petitioner testified that throughout his criminal trial he emphatically told trial counsel that counsel needed to put petitioner on the stand. He further testified that counsel never told him had the right to testify or that it was his decision to make, but rather "inferred that [petitioner] did not have a right. And that it would be absolutely out of line for [petitioner] to object to not being able to testify". He asserted that he wanted to testify to counter his older sister and father's testimony pertaining to the conversation

14 - OPINION AND ORDER

had outside the Bishop's office wherein petitioner reportedly said "I admit to the whole thing" by explaining that he was referring solely to the burglary and not to any alleged sex offenses.   He also wanted to testify that he never sexually abused the second victim and never committed the penetration offenses against Stephanie Jones.  Respondent's Exhibit 134, pp. 10-21.

> In denying petitioner's claim, the PCR court concluded:
>
> [P]etitioner followed [the] advice of [his] attorney not to testify.  Based on pet[itioner]'s earlier statements and based on pet[itioner]'s deposition, the attorney made a difficult strategy decision weighing the possible risks of pet[itioner]'s testifying vs. the possible benefit. The petitioner has not proven that the decision was a constitutionally inadequate one.

Respondent's Exhibit 135, pp. 1-2.

A tactical decision exercised by counsel deserves deference when counsel makes an informed decision based on strategic trial considerations and the decision appears reasonable under the circumstances.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  On the other hand, "it cannot be permissible trial strategy, regardless of the merits or otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice."  *United States v. Mullins*, 315 F.3d 449, 453 (9th Cir. 2002).  This is so because "a defendant in a criminal case has the right to take the witness stand and testify in his own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  The defendant may, however, waive this right, either explicitly or implicitly.

15 - OPINION AND ORDER

See *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir.
1999).  Such waiver may be inferred from a defendant's failure to
testify at trial or to notify the court of his desire to testify.
See *id.* at 1094-95.  "Although the ultimate decision whether to
testify rests with the defendant, he is presumed to assent to his
attorney's tactical decision not to testify," but he "can reject
his attorney's tactical decision by insisting on testifying,
speaking to the court, or discharging his lawyer." *United States
v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

Petitioner contends that the PCR court's findings of fact are
not entitled to deference here because that court failed to address
the issue of whether trial counsel ever informed petitioner that it
was his decision alone whether or not to testify.  Brief in Support
[43], p. 57.  While the PCR court did not specifically note in its
denial that petitioner had been advised of his constitutional right
to testify, a fair review of the record reveals that the question
was squarely before that court and considered by it.  Indeed, the
PCR court rejected the State's argument that the court should not
entertain the issue at all because it constituted a new claim based
on trial counsel's alleged failure to advise petitioner of his
right to testify, rather than the one set out in the Petition based
on counsel's ineffectiveness for failing to put petitioner on the
stand.  See Respondent's Exhibit 134, pp. 22-31.  Again, both
issues were squarely before the court and implicit in its denial of

16 - OPINION AND ORDER

petitioner's claim is the court's rejection of petitioner's contention that counsel did not advise him of his constitutional right to testify.

Here, petitioner has failed to demonstrate that counsel rendered prejudicially ineffective assistance by advising him not to testify on his own behalf. For the reasons given by the PCR court, counsel made a reasonable tactical decision. Moreover, the record makes clear that the PCR court was fully aware of petitioner's contention that trial counsel failed to advise him that he had a right to testify and that had petitioner known of this right he would have taken the stand over counsel's objection. It is evident that the PCR court rejected these arguments as incredible and concluded that petitioner opted not to take the stand in accordance with his attorney's advice and not because he was unaware of his constitutional right to do so.

Accordingly, the Court concludes that petitioner cannot demonstrate that the PCR court's denial of the ineffective assistance of counsel claim set out in Ground Five was contrary to or involved an unreasonable application of *Strickland*.

### 2. **Ground Four: Factual Innocence (Freestanding Actual Innocence)**

The United States Supreme Court has not held that a freestanding claim of actual innocence is cognizable on federal habeas review. *McQuiggan v. Perkins,* __ U.S. __, 133 S.Ct. 1924,

17 - OPINION AND ORDER

185 L.Ed.2d 1019 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *see also House v. Bell*, 547 U.S. 518, 545-55 (2006)(declining "to answer the question left open in *Herrera*" of whether "freestanding innocence claims are possible").

In *Herrera*, the Supreme Court did not specify what showing would be required for a habeas petitioner to make out a successful freestanding claim of actual innocence, assuming such a claim existed. *See* 506 U.S. at 417. Nevertheless, the Supreme Court stated that the threshold would be "extraordinarily high" and that the showing would have to be "truly persuasive." *Id.*

The Ninth Circuit has assumed that freestanding actual innocence claims are cognizable in both capital and non-capital cases, and has articulated a minimum standard of proof applicable to such claims. As a district judge I must follow the 9th Circuit precedential decision of *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)("[A] habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.")

Measured against this exceptionally demanding standard, the petitioner faces a difficult task of establishing his actual innocence.

### Evaluation of K. Jones

At trial K. Jones testified to the jury that petitioner admitted to him that he had penetrated Stephanie, that he had sex with her and full intercourse with her.    In these proceedings K. Jones now recants in full that testimony as false and concocted by him.  He gives a wimpy excuse for committing this perjury which I reject.    He obviously did this despicable act to send his disowned son to prison (where he thought he belonged) for sexually damaging his daughter to the extent that she would be so contaminated she could not be married in the Mormon temple. However, on the issue of whether petitioner admitted to K. Jones that petitioner penetrated Stephanie, I accept K. Jones' recantation as true and reject his trial testimony.

Comment: Apparent from the record the motivation for K. Jones recantation was that a subsequent physical examination demonstrated that Stephanie's hymen was intact, which he naively felt was proof that she had not been "penetrated."

### Evaluation of Jennifer Pond

### (Stephanie's sister)

With regard to the credibility of Pond's testimony and how it relates to petitioner's claim of actual innocence, the Court

19 - OPINION AND ORDER

highlights two instances in which her testimony has shifted significantly and without persuasive explanation since the time of trial. First, at trial Pond specifically testified that in the aforementioned conversation that took place outside the Bishop's office wherein petitioner said "I admit to the whole thing", he was talking about his abuse of Stephanie and not the burglary:

Q.    Okay. What do you recall the defendant saying?

A.    He said, *I admit to the full thing. Just don't come after me with the police.*

Q.    When he said that, was the, um, context of that conversation in regards to the allegations that Stephanie had made that she had been abused by the defendant?

A.    Yes.

Transcript of Proceedings - Part A, p. 236. In contrast, Pond now contends that petitioner was referring to the burglary as indicated by the fact he handed the keys to the storage shed over as he made the comment.

Similarly, with regard to Pond's testimony at trial that at one point Stephanie complained to her about vaginal pain and that on examination Pond noticed Stephanie's vaginal area "looked a little red to [her]", Pond testified that their conversation took place while the family was living in the Toledo house. Significantly, this time period, sometime after the end of 1998 or the very beginning of 1999, coincided with the time period that the unlawful penetration offenses were alleged to have occurred. *Id.* at 237; Respondent's Exhibit 102. At the evidentiary hearing,

20 - OPINION AND ORDER

however, Pond testified on rebuttal that the incident with the vaginal pain and redness occurred between 1993 to 1997. Excerpt of Proceedings (Evidentiary Hearing October 24, 2013). In explaining the discrepancy between her testimony now and at trial nearly ten years ago, Pond stated, "I guess that's how I remembered it at the time." *Id.* In sum, Pond's testimony at this juncture lacks credibility. It neither adds nor detracts from the issues in this proceeding.

Finally, the Court turns to Stephanie Jones' recent video taped interview and her testimony at the evidentiary hearing recanting her trial testimony on the key issue of whether petitioner digitally penetrated her--the most persuasive evidence in support of petitioner's claim of actual innocence. In brief, Stephanie asserts that she grew up in a highly conservative, religious family and that she was very naive about her body and knew nothing of the specifics of her genitalia--though she did testify that she knew that her brother had a penis and she did not. According to Stephanie, as a result of her upbringing, she did not know at the time of petitioner's trial that she possessed an internal space within her vagina capable of penetration. She testified that it was only as she matured into a woman and gained an understanding of her anatomy that she realized that petitioner had not in fact ever penetrated her vagina. Specifically, she testified that when she testified at trial about petitioner putting

21 - OPINION AND ORDER

his fingers "inside", she now realizes that the area she was referring to was the clitoral region and upper area of her labia, not her vagina.

In assessing this new evidence, the Court concludes that the record supports Stephanie's assertion that she grew up in an exceptionally conservative religious home and it is evident from her video taped interviews prior to trial that she had relatively limited knowledge of her genitalia. The record also makes clear, that Stephanie grew up in a highly dysfunctional home dominated by an imposing and controlling father. The Court cannot assess to what degree, if any, Stephanie's present recantation has been influenced by her family--K. Jones and Pond in particular.

While the Court is cognizant of the exceedingly high threshold for proving a freestanding claim of actual innocence, it is satisfied that petitioner has affirmatively proven that he is "probably innocent" of the unlawful penetration convictions. The Court concludes that petitioner's evidence of actual innocence, particularly K. Jones recantation and the victim's unequivocal testimony that petitioner never penetrated her vagina, is sufficient to satisfy the heightened showing for a freestanding claim of actual innocence, assuming such a claim is cognizable in a non-capital federal habeas corpus action.

///

///

22 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Amended Petition for Writ of Habeas Corpus [42] is GRANTED on ground four and DENIED on grounds one through three and five.   Petitioner's convictions for Unlawful Sexual Penetration in the First Degree are vacated.   Because petitioner has made a showing of freestanding actual innocence and has completed his sentence on the remaining sexual abuse conviction, respondent is ordered to release petitioner from custody and to discharge him from all other adverse consequences related to the unlawful penetration convictions within 30 days.

The Court grants a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1) on the issues of:    (1) whether a freestanding claim of actual innocence is cognizable in a non-capital federal habeas corpus proceeding; and (2) whether petitioner has satisfied the threshold for proving a freestanding claim of actual innocence.

IT IS SO ORDERED.

DATED this _19th_ day of December, 2013.

_____
        Robert E. Jones
        United States District Judge